JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Raymond Brown, appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas on three counts of felonious assault on a peace officer and one count of possession of drugs.[1]
For the reasons stated herein, we affirm.
 {¶ 2} In this case, Brown was tried and convicted of three counts of felonious assault on a peace officer by means of a deadly weapon or dangerous ordinance (R.C. 2903.11(A)(2)), one count of failure to comply with the order or signal of a police officer (R.C. 2921.331), and one count of possession of drugs (R.C. 2925.11(A)).[2] Brown was sentenced to a total term of incarceration of ten years.
 {¶ 3} The charges in this case stemmed from events that occurred on May 8, 2007, in the early morning hours. Officer Michael Keane and Officer John Jelar of the Cleveland Police Department testified that they were on patrol in the area of Fleet Avenue and East 54th Street. They observed a beige Ford minivan that pulled into a driveway and began honking its horn. Officer Keane pulled up just short of the driveway apron, turned on the overhead lights, and put a spotlight on the minivan. As Officer Jelar was running the temporary *Page 4 
license plate, the minivan began to quickly back up. The officers believed that the driver was attempting to hit their zone car. Officer Keane testified that he had to put the zone car into reverse in order to avoid being struck by the minivan. He further stated that had he not moved the zone car, the minivan would have struck it. The minivan then took off, and the officers followed in pursuit with the zone car's lights and siren activated. Officer Keane observed the minivan go through red lights and a stop sign without slowing down.
 {¶ 4} Officer William Peterson, Jr., of the Newburgh Heights Police Department testified that he joined the pursuit of the minivan at East 55th Street and Fleet Avenue, where he saw the minivan go through the red light at a high rate of speed closely followed by the Cleveland zone car with its lights and siren on. Officer Peterson estimated that the speed of the minivan was 50 to 55 m.p.h. in a 25 m.p.h. zone. He testified that had he proceeded through the intersection, the minivan would have hit him dead center. Upon joining the pursuit, Officer Peterson turned on his vehicle's lights and sirens.
 {¶ 5} Officer Jelar testified that during the pursuit, the minivan driver braked hard and then cut over to the left toward the Cleveland zone car. Officer Keane testified that he moved to the left with the zone car and the minivan swerved toward him. Officer Keane stated he had to make an evasive move to *Page 5 
avoid being hit. Officer Peterson observed the Cleveland zone car overshooting the minivan as the minivan driver made a sharp right turn onto a side street.
 {¶ 6} The pursuit continued as the minivan drove off at a high rate of speed. Officer Peterson's vehicle became the lead chase car. The officer testified that there were several times that the minivan driver slammed on the brakes in an apparent effort to get the officer to strike the rear of the minivan and disable the zone car. Officer Peterson was forced to swerve left to avoid striking the rear of the minivan. As the chase proceeded, the minivan driver was swerving and weaving so that the Newburgh Heights zone car could not pass and stop him. At one point, as the zone car was trying to pass, the minivan driver swerved over and almost hit the zone car. Officer Peterson went into the opposite travel lane. He testified: "I was lucky it wasn't but one or two cars left of center coming west to east. But, yeah, he was aggressively trying to hit me and trying to damage my vehicle to stop me."
 {¶ 7} Officer Jelar and Officer Keane also observed the minivan "brake check" and swerve several times in an apparent attempt to hit the Newburgh Heights zone car. Officer Peterson testified that the rate of speed in the chase reached 65 to 80 m.p.h. and that the pursuit lasted three to five miles.
 {¶ 8} The minivan eventually turned onto a dead-end street. Toward the end, the minivan went into reverse in another apparent attempt to hit the *Page 6 
Cleveland zone car. Officer Keane testified that the minivan came "within inches of the bumper." The minivan then accelerated and became stuck between two wooden posts. The driver tried to move the minivan back and forth, but the vehicle remained stuck. The officers apprehended the minivan driver, who
was identified in court as Brown. There was also a passenger in the minivan. The plate on the minivan came back as stolen. The minivan was inventoried and towed. The officers recovered suspected drugs from the driver's area in the minivan. It was later determined that the recovered substances consisted of 4.11 grams of MDMA (ecstasy) and .97 grams of fake crack cocaine. An audio recording of the chase was entered into evidence.
 {¶ 9} A jury found Brown guilty of the above offenses. Brown brought this appeal, raising four assignments of error for our review. His first assignment of error provides as follows:
 {¶ 10} "I. Appellant Raymond Brown's conviction of the two felonious assaults on a peace officer lacked sufficient evidence to support those convictions."
 {¶ 11} Brown argues that there was insufficient evidence to infer that he intended to commit a felonious assault on the two Cleveland police officers by backing up in a driveway. He states that the audio recording reflects that after backing out of the driveway he began taking off at a "slow" speed. He further *Page 7 
states that the evidence reflects that the Cleveland police car was not obstructing the minivan's egress from the driveway and that the minivan did not hit the police car.
 {¶ 12} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 13} R.C. 2903.11 (A)(2), felonious assault, provides the following: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." A person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Pursuant to R.C. 2903.11(B), felonious assault is a first degree felony if the victim of the crime is a peace officer as defined in R.C. 2901.11(D).
 {¶ 14} Upon our review of the evidence, we find that there was sufficient evidence before the jury to prove Brown knowingly attempted to cause physical harm to the Cleveland police officers with his vehicle. Officer Keane testified that when he pulled up to the driveway, he activated his overhead lights and positioned a spotlight on the minivan. The minivan accelerated backwards *Page 8 
"quickly," and Officer Keane had to put the car into reverse to avoid being hit. Both Officer Keane and Officer Jelar testified that it appeared that the minivan driver was attempting to hit the police car. While Brown makes much of the fact that the audio recording reflected he was taking off at a "slow" speed and that the officers were not hit, there remained ample circumstantial evidence upon which the trier of fact could find that Brown knowingly attempted to hit the police car.
 {¶ 15} Further, the officers testified to the ensuing actions of Brown during the high speed chase, including his sudden braking and swerving in an apparent attempt to strike the Cleveland police car. The officers indicated that Officer Keane had to make an evasive move to avoid being hit. Finally, there was testimony that Brown placed his car into reverse near the end of the chase in another apparent attempt to strike the Cleveland police car. The audio recording contained a statement by Officer Jelar exclaiming, "Oh, no, no, no, he is backing up. He is going to hit us."
 {¶ 16} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Brown's first assignment of error is overruled.
 {¶ 17} Brown's second assignment of error provides as follows: *Page 9 
 {¶ 18} "II. Appellant Raymond Brown was found guilty of felonious assault (count 3) against the Newburgh Heights police officer against the manifest weight of the evidence."
 {¶ 19} Brown argues that there is a distinction between the reckless operation of a vehicle in an effort to flee from police and a felonious assault on a peace officer. He claims that the evidence in this case "sounds more like a very dangerous game of chicken then [sic] a felonious assault" and argues that the Newburgh Heights police car was never hit.
 {¶ 20} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotes and citations omitted.) State v.Leonard, 104 Ohio St.3d at 68.
 {¶ 21} Our review of the record reflects there was substantial evidence upon which a jury could reasonably conclude that all the elements of felonious assault on a peace officer had been proved beyond a reasonable doubt. Officer Peterson testified that during the high-speed chase, there were several times that Brown *Page 10 
slammed on the brakes in an apparent effort to hit and disable the Newburgh Heights zone car. Officer Peterson also testified that Brown swerved toward the police car and appeared to be "aggressively trying to hit me and trying to damage my vehicle to stop me." Officer Jelar and Officer Keane also observed Brown's apparent attempts to hit the Newburgh Heights zone car.
 {¶ 22} Contrary to Brown's argument, the fact that Officer Peterson testified that he was in control of his police car and did not get hit does not preclude a finding that Brown knowingly attempted to cause physical harm to the peace officer. We find that Brown's conviction on count three was not against the weight of the evidence and overrule his second assignment of error.
 {¶ 23} Brown's third assignment of error provides as follows:
 {¶ 24} "III. The trial court erred in accepting the jury's written verdict on count six (possession of drugs) under the wrong statute."
 {¶ 25} In this matter, the verdict form pertaining to count six of the indictment indicated that the offense of possession of drugs was a violation of R.C. 2925.11(a) rather than a violation of R.C. 2925.11(A). It is clear from the record that the reference to the use of a lowercase "a" in the verdict form was merely a clerical error. Further, there is no evidence that the trial court incorrectly instructed the jury with respect to count six in the indictment and the trial court sentencing order contains the correct statute. Accordingly, we find no prejudicial error occurred. See State v. Miller (Dec. 22, 2000), Lucas App. *Page 11 
No. L-00-1018; State v. Cole (Sept. 13, 1995), Wyandot App. No. 16-94-11. Brown's third assignment of error is overruled.
 {¶ 26} Brown's fourth assignment of error provides as follows:
 {¶ 27} "IV. The state of Ohio should be foreclosed from bringing felonious assault of peace officer charges (3 F-1's) when the more specific statute of `failure to comply' is also charged, and contained comparable elements."
 {¶ 28} Brown argues that a failure-to-comply charge is a lesser and more specific charge than the three charges of felonious assault on a peace officer. In making this argument, Brown relies on the fact that the failure-to-comply charge herein involved a physical harm specification.
 {¶ 29} The Ohio Supreme Court has recognized that "R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import and additionally do not constitute crimes committed separately or with a separate animus for each crime."State v. Chippendale (1990), 52 Ohio St.3d 118, 120. Thus, "[w]here the offenses are not allied offenses of similar import they are not irreconcilable under R.C. 1.51." State v. Eppinger, 162 Ohio App.3d 795,798, 2005-Ohio-4155. To be an allied offense of similar import, the elements must align in such a way that the commission of one offense automatically results in the commission of the other. State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291. *Page 12 
 {¶ 30} Our review of the statutes in this case reveals that they do not have identical statutory elements. R.C. 2921.331(B) defines the offense of failure to comply as operating "a motor vehicle so aswillfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." (Emphasis added.) The statute also contains a physical harm specification that enhances the penalty when, in committing the offense of failure to comply, the operator of the motor vehicle "caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a) (ii). The Ohio Supreme Court recently recognized that the failure to comply statute's physical harm specification, R.C. 2921.331(C)(5)(a)(ii), has no specified culpable mental state. State v.Fairbanks, 117 Ohio St.3d 543, 546, 2008-Ohio-1470. Thus, the provision "plainly indicates a purpose to impose strict criminal liability," and whether the result or consequence was intended by the defendant is of no import. Id.
 {¶ 31} Unlike the failure to comply statute, the offense of felonious assault requires that the offender "knowingly" cause or attempt to cause physical harm by means of a deadly weapon or ordinance. R.C. 2903.11(A)(2). Accordingly, we find that the offense of failure to comply with an order or signal of a police officer, R.C. 2921.331(B), with the additional specification that the offender's operation of the motor vehicle caused a substantial risk of serious physical harm *Page 13 
to persons or property, R.C. 2921.331(C)(5)(a)(ii), is not an allied offense to felonious assault on a peace officer.
 {¶ 32} Brown's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and MARY J. BOYLE, J., CONCUR
[1] Brown has not challenged his conviction for failure to comply with the order or signal of a police officer.
[2] Brown was acquitted on charges of receiving stolen property and trafficking in drugs. *Page 1