[Cite as *State v. Eldridge*, 2019-Ohio-1265.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No.  L-18-1084

        Appellee                                     Trial Court No.  CR0201702682

v.

Kevin Eldridge                                     **DECISION AND JUDGMENT**

        Appellant                                    Decided:  April 5, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} Appellant, Kevin Eldridge, appeals the judgment of the Lucas County Court

of Common Pleas, sentencing him to four years of community control after a jury found

him guilty of one count of disrupting public services.  Finding no error, we affirm.

## A.    Facts and Procedural Background

{¶ 2} On September 27, 2017, appellant was indicted on one count of disrupting public services in violation of R.C. 2909.04(B) and (C), a felony of the fourth degree, and two counts of aggravated menacing in violation of R.C. 2903.21(A) and (B), misdemeanors of the first degree. Appellant pled not guilty to these charges, and pretrial discovery ensued. Following discovery, a jury trial commenced on January 23, 2018. At trial, the following facts were established.

{¶ 3} On March 23, 2017, the Springfield Township Fire Department received a report of an outdoor fire at appellant's residence located on Hill Avenue in Holland, Ohio. The fire was reportedly producing smoke that was traveling across Hill Avenue and disrupting traffic. As a result of the report, a crew of three firefighters were dispatched to appellant's residence.

{¶ 4} Upon arrival, the crew observed that the residence was fortified with man-made "earthen mounds" and looked like a gated compound. According to one of the firefighters, the smoke that was emanating from a gated area of the residence was not impeding traffic at the time of the crew's arrival. The large fire originated from a pit that was four feet deep and ten feet in diameter. According to Captain David Bennett, a fire of this size was prohibited under the applicable fire code, which only permits campfires that are no larger than three feet in diameter and no higher than five feet.

2.

**{¶ 5}** After parking their fire engine and approaching the property, the crew was approached by a female who directed them to vacate the premises after informing them that the residence was private property. The testimony introduced at trial reveals that this individual was "irate" and "hostile" at the time.

**{¶ 6}** At some point during their conversation with the female individual, the crew heard a male voice over a loudspeaker situated at the residence. The male speaker informed the crew that they were trespassing, and directed them to vacate the premises. The male individual then stated: "I'm within my right to shoot you, I will shoot you if you do not get off my property." Only one firefighter, Kyle Miller, heard this statement. According to Miller, the male individual repeated this statement several times, each time getting more and more aggressive. Miller then reported the threat to Bennett, who directed the crew to move to the rear of the fire engine to take cover. Miller also testified that the voice that threatened to shoot the firefighters if they proceeded onto the property was the same voice that was speaking on the loudspeaker when the police subsequently arrived.

**{¶ 7}** While sheltered, Bennett requested assistance from the Lucas County Sheriff. Detective Frank Reidy and Captain Matthew Luettke of the Lucas County Sheriff's Office responded to the scene. When the officers arrived, they overheard a male voice over a loudspeaker, directing authorities to leave the property and informing them that they were trespassing.

3.

**{¶ 8}** Reidy stated at trial that the voice he heard over the loudspeaker was appellant's, although he acknowledged that he "never had eyes on [appellant]. I never physically saw him." Reidy indicated that he had previously responded to calls at the Hill Avenue address, which he stated was appellant's residence. After identifying appellant as the defendant sitting in the courtroom, Reidy went on to testify that he is familiar with appellant's voice, having previously spoken to appellant during an incident involving a neighbor dispute. Reidy described appellant's voice as "unique."

**{¶ 9}** For his part, Luettke testified that he has come into contact with appellant "a few times" in the past. As a result of his past encounters with appellant, Luettke stated that he was able to positively identify appellant's voice as the voice he heard on the loudspeaker at the Hill Avenue residence.

**{¶ 10}** After the officers arrived on the scene, they discussed the situation with Bennett and it was decided that the crew would have to abort the fire call due to safety concerns. The crew then proceeded back to their station. Likewise, Reidy and Luettke were forced to depart from the property.

**{¶ 11}** At the conclusion of the trial, appellant moved for acquittal under Crim.R. 29. The trial court denied appellant's motion with respect to charge of disrupting public services and one count of aggravated menacing. The trial court then granted appellant's motion as to one of the aggravated menacing counts. Thereafter, the jury found appellant guilty of disrupting public services, and was unable to reach a verdict as to the remaining

4.

aggravated menacing charge. As such, the trial court declared a mistrial on the remaining aggravated menacing count, and the matter was continued for sentencing.

{¶ 12} At sentencing, the trial court dismissed the remaining aggravated menacing charge without prejudice pursuant to the state's request. As to the disrupting public services charge, appellant was ordered to serve four years of community control, with the trial court reserving a 14-month prison sentence. It is from this judgment that appellant has filed a timely notice of appeal.

### B. Assignments of Error

{¶ 13} On appeal, appellant assigns the following errors for our review:

First assignment of error: The trial court erred to the prejudice of appellant in denying his Crim.R. 29 motion upon completion of the state's case in chief.

Second assignment of error: The jury's verdict was against the manifest weight of the evidence presented at trial.

### II. Analysis

{¶ 14} In appellant's first assignment of error, he contends that the trial court erred in denying his motion for acquittal under Crim.R. 29 as to the charge of disrupting public services.

{¶ 15} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507,

5.

824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 16} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} Here, appellant was convicted of one count of disrupting public services in violation of R.C. 2909.04(B), which provides:

> (B) No person shall knowingly use any computer, computer system, computer network, telecommunications device, or other electronic device or system or the internet so as to disrupt, interrupt, or impair the functions of any police, fire, educational, commercial, or governmental operations.

6.

{¶ 18} Appellant does not dispute that the state's evidence established that *someone* knowingly used an electronic device (the remotely-controlled loudspeaker) in a manner that prevented the Springfield Township Fire Department from carrying out its duties to extinguish the illegal fire that was burning at the Hill Avenue residence. However, appellant argues that the state failed to establish that he was the male individual who was heard making threats over the loudspeaker. In support of his argument, appellant relies upon the fact that he was "never actually seen or identified by anyone at [the Hill Avenue residence]."

{¶ 19} In response, the state argues that the testimony provided at trial establishes that appellant was the individual who threatened to shoot the firefighters if they proceeded onto the property.

{¶ 20} Given the testimony at trial, it is clear the state met its burden in this case. On the issue of identity, Miller testified that the voice that threatened the firefighters was the same voice that was speaking when the police arrived. Further, both Reidy and Luettke testified that they were familiar with appellant's voice, having encountered appellant in the past. They each testified that they recognized the voice that was being transmitted over the loudspeaker as appellant's voice.

{¶ 21} Taken together, we find that the testimony of Miller, Reidy, and Luettke establish that appellant was the individual who threatened the safety of the firefighters

7.

and prevented them from extinguishing the fire. Thus, we find that appellant's argument is without merit. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 22} In his second assignment of error, appellant argues that the jury's verdict was against the manifest weight of the evidence. While appellant's second assignment of error is phrased in terms of manifest weight of the evidence, his argument is really that the verdicts were inconsistent. Specifically, appellant argues that the jury's guilty verdict on the charge of disrupting public services was inconsistent with the jury's inability to reach a verdict on the charge of aggravated menacing.

{¶ 23} As noted by the state, the failure of the jury to reach a verdict on the aggravated menacing charge is a "nonevent" and is therefore not inconsistent with the jury verdict on the charge for disrupting public services. *Yeager v. United States*, 557 U.S. 110, 120, 129 S.Ct. 2360, 174 L.Ed. 2d 78 (2009). Well-established Ohio Supreme Court precedent provides that "[a] verdict responding to a designated count will be construed in the light of the count designated, and no other." *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566, paragraph four of the syllabus (1929). "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus. Thus, the jury's

inability to reach a verdict on the aggravated menacing charge was not inconsistent with the jury's determination of guilt on the disrupting public services charge.

{¶ 24} Accordingly, appellant's second assignment of error is not well-taken.

### III.    Conclusion

{¶ 25} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is hereby affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                _____

JUDGE

Thomas J. Osowik, J.

_____

Gene A. Zmuda, J.                 JUDGE
CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of

Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

10.