[Cite as *State v. Bailey*, 2023-Ohio-657.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                            Court of Appeals No.  H-22-008

    Appellee                                        Trial Court No.  CRI20220028

v.

James E. Bailey, Jr.                            **DECISION AND JUDGMENT**

    Appellant                                       Decided:  March 3, 2023

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney, and
Barry R. Murner, Assistant Prosecuting Attorney, for appellee.

Sarah A. Nation, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Following a jury verdict, defendant-appellant, James E. Bailey, Jr., appeals

the May 27, 2022 judgment of the Huron County Court of Common Pleas, convicting

him of involuntary manslaughter, corrupting another with drugs, and aggravated

trafficking in drugs.  For the following reasons, we affirm the trial court judgment.

## I.     Background

{¶ 2} Forty-nine-year-old R.S. was found dead in his recliner at approximately 8:00 a.m. on December 15, 2019.  His arm was hanging over the side of the chair, and on the floor, directly beneath his hand, was a straw and a baggy of white powder.  Testing revealed that the baggy contained the drug carfentanil—a fentanyl analog that is used as an elephant tranquilizer and is exponentially more potent than fentanyl.  In toxicology testing of R.S.'s blood, carfentanil was detected in a concentration of 0.15 ng/ML; his blood-alcohol concentration was found to be 0.10—by itself, a non-lethal level.  R.S.'s cause of death was determined to be "combined drug intoxication-carfentanil, alcohol."

{¶ 3} An examination of R.S.'s smartphone revealed that at 9:21 p.m. on December 14, 2019, R.S. contacted his marijuana dealer, James E. Bailey, Jr., inquiring whether Bailey could supply him with drugs stronger than marijuana.  The following text messages were exchanged between them:

| From | To | Time | Message |
|------|------|-----------|---------|
| R.S. | Bailey | 9:21 p.m. | What's up buddy, I was wondering about something….you just sell weed product |
| Bailey | R.S. | 9:21 p.m. | Like what you looki [sic] for |
| R.S. | Bailey | 9:23 p.m. | Uppers, speed, maybe coke or ice, depending on price |
| Bailey | R.S. | 9:23 p.m. | Got some hard |
| R.S. | Bailey | 9:23 p.m. | Rock |
| R.S. | Bailey | 9:23 p.m. | Crack? |
| Bailey | R.S. | 9:24 p.m. | Yea |
| R.S. | Bailey | 9:24 p.m. | Cool, I got 40 |
| R.S. | Bailey | 9:24 p.m. | I'm home |
| Bailey | R.S. | 9:24 p.m. | I'm not in town rn but will be later |
| Bailey | R.S. | 9:25 p.m. | Around 10 1030 |
| R.S. | Bailey | 9:25 p.m. | I'll be home |

2.

| R.S. | Bailey | 9:25 p.m. | Message so I'll be ready for ya |
|------|--------|-----------|----------------------------------|
| Bailey | R.S. | 9:26 p.m. | Ok |
| R.S. | Bailey | 9:26 p.m. | Bout an hour |
| R.S. | Bailey | 10:10 p.m. | Actually I got 50, hook a cracker up buddy |
| Bailey | R.S. | 10:11 p.m. | Ok lol |
| Bailey | R.S. | 10:11 p.m. | I'm driving to town now |
| R.S. | Bailey | 10:11 p.m. | 👍 |
| R.S. | Bailey | 10:12 p.m. | I'll be in town buddy |
| R.S. | Bailey | 10:47 p.m. | You close buddy |
| Bailey | R.S. | 10:56 p.m. | Be there soon |
| R.S. | Bailey | 10:58 p.m. | Okok |
| Bailey | R.S. | 11:09 p.m. | Here |
| Bailey | R.S. | 11:21 p.m. | Let me know how that is |
| R.S. | Bailey | 11:22 p.m. | Not what I was expecting, no numbness, but I just did a line, so we'll see |
| Bailey | R.S. | 11:29 p.m. | That was work,[1] you not supposed to do lines 😂 |

{¶ 4} Bailey's 11:29 p.m. text to R.S. was never read.

{¶ 5} Approximately eight-and-a-half hours later, R.S.'s fiancée—who had gone to bed before 10:30 p.m.—discovered R.S. dead in his chair.  His body was cold and rigor mortis had occurred.

{¶ 6} Bailey was indicted on charges of involuntary manslaughter, a violation of R.C. 2903.04(A) and (C), a first-degree felony (Count 1); corrupting another with drugs, a violation of R.C. 2925.02(A)(2) and (C)(1), a second-degree felony (Count 2); corrupting another with drugs, a violation of R.C. 2925.02(A)(3) and (C)(1), a second-degree felony (Count 3); trafficking in a fentanyl-related compound, a violation of R.C. 2925.03(A)(1) and (C)(9)(a), a fifth-degree felony (Count 4); aggravated trafficking in

---

[1] The state presented evidence that "work" is a slang term for cocaine.

3.

drugs, a violation of R.C. 2925.03(A)(1) and (C)(1)(a), a fourth-degree felony (Count 5); and tampering with evidence, a violation of R.C. 2921.12(A)(1) and (B), a third-degree felony (Count 6).

{¶ 7} The case was tried to a jury on March 24, 25, and 28, 2022. Bailey testified in his own defense and claimed that what he had sold R.S. was baking powder. He explained that he sold only marijuana, R.S. had asked him several times if he sold anything stronger than marijuana, he was tired of R.S. asking, and he decided to "rip him off" by selling him baking powder. Bailey's position was that R.S. must have obtained the carfentanil from someone else.

{¶ 8} Before the case was submitted to the jury for deliberation, the state dismissed Counts 2, 4, and 6. The jury found Bailey guilty of Counts 1, 3, and 5. The court sentenced him to an indefinite prison term of four years with a maximum term of six years on Count 1; an indefinite prison term of two years with a maximum term of three years on Count 3; and a prison term of six months on Count 5. It ordered that the sentences be served concurrently. Bailey's conviction and sentence were memorialized in a judgment entered on May 27, 2022.

{¶ 9} Bailey appealed. He assigns the following errors for our review:

Assignment of Error No. 1: Appellant's conviction is based upon insufficient evidence and his conviction is against the manifest weight of the evidence and the trial court erred in denying defendant's rule 29 motion.

4.

Assignment of Error No. 2: Defense counsel's performance of his duties was deficient in that he made errors so serious that he failed to function as the counsel guaranteed by the sixth amendment and appellant was prejudiced by said errors.

## II.　Law and Analysis

{¶ 10} In his first assignment of error, Bailey challenges the sufficiency and weight of the evidence in support of his conviction. In his second assignment of error, he claims that the performance of trial counsel was deficient. We address each of these assignments in turn.

## A.　Sufficiency and Weight of the Evidence

{¶ 11} In his first assignment of error, Bailey argues that his convictions were against the sufficiency and weight of the evidence. He emphasizes that he voluntarily appeared at the Norwalk Police Department and explained that while he regularly sold marijuana to R.S., he did not sell him narcotics. He maintains that on the night before R.S. died, he sold R.S. baking soda—not narcotics—to rip him off. Bailey complains that the state failed to investigate the truth of these claims. He insists that the state did not look for the baggy of baking soda and did not try to determine whether someone else had provided drugs to R.S. As such, he claims that the state did not prove that he proximately caused R.S.'s death.

5.

**{¶ 12}** The state responds that a baggy containing carfentanil was found just beneath R.S.'s hand; carfentanil was determined to be the cause of R.S.'s death; text messages showed that R.S. requested that Bailey provide him with something harder than marijuana and Bailey told him he would sell him crack; the transaction was completed at 11:09 p.m. and there was no evidence from R.S.'s phone that he contacted anyone else to obtain drugs; R.S. and Bailey texted back-and-forth for several minutes after Bailey delivered the baggy to R.S.; and R.S. never read the last text that Bailey sent at 11:29 p.m. R.S.'s fiancée found him dead the next morning.

**{¶ 13}** Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker,* 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. Naturally, this requires "a review of the elements of the charged offense and a review of the state's evidence." *Id.*

6.

{¶ 14} R.C. 2903.04(A) provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2925.02(A)(2) provides that "[n]o person shall knowingly * * * [b]y any means, * * * furnish to another * * * a controlled substance, and thereby cause serious physical harm to the other person * * *." Where, as here, the substance at issue is a schedule I or II drug, R.C. 2925.02(C)(1)(a) makes it a felony of the second degree. And R.C. 2925.03(A)(1) provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance or a controlled substance analog." Again, where the substance at issue is a schedule I or II drug, a violation of R.C. 2925.03(A)(1) constitutes aggravated trafficking in drugs, a fourth-degree felony. R.C. 2925.03(C)(1)(a).

{¶ 15} Here, the state presented evidence that R.S. asked to purchase hard drugs from Bailey; Bailey agreed to supply crack; Bailey delivered a baggy of powder to R.S.; R.S. texted Bailey that he had done a line and Bailey told him "that was work, you['re] not supposed to do lines"; R.S. failed to read this last message, which was sent at 11:29 p.m.; R.S. did not use his phone again after 11:22 p.m.; R.S.'s fiancée found him dead in his chair at 8:00 a.m. and R.S.'s body was already cold and rigor mortis had occurred; a straw and a bag of powder were found beneath R.S.'s hand; testing revealed that the baggy contained carfentanil; and R.S.'s death was determined to have been caused by his ingestion of carfentanil.

7.

{¶ 16} In examining a claim that a conviction was not supported by sufficient evidence, we must view the probative evidence "*and inferences reasonably drawn therefrom*" in a light most favorable to the prosecution. (Emphasis added.) *State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999). The inference to be drawn here is that because Bailey delivered a baggy of powder to R.S., a baggy of powder was found near R.S.'s body, the baggy contained carfentanil, and carfentanil caused R.S.'s death, the baggy Bailey delivered must have contained carfentanil. Drawing that inference in favor of the state, as we must, we find that the state presented sufficient evidence that Bailey sold carfentanil to R.S. and R.S.'s ingestion of that carfentanil led to his death.

{¶ 17} We conclude that the state presented sufficient evidence that Bailey caused R.S.'s death as a proximate result of committing a felony. Bailey furnishing carfentanil to R.S., resulting in serious physical harm, and selling carfentanil to R.S. violated R.C. 2925.02(A)(2) and (C)(1)(a) and R.C. 2925.03(A)(1) and (C)(1)(a) and constituted the underlying felony required to convict under R.C. 2903.04(A). As such, the state presented evidence of each of the elements of involuntary manslaughter, corrupting another with drugs, and aggravated trafficking in drugs.

{¶ 18} Turning to Bailey's challenge to the weight of the evidence, when reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the

8.

credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson,* 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 20} Here, Bailey testified in his own defense. He admitted that he sold marijuana to R.S. and that he told R.S. he would sell him $50 worth of crack. While he told the jury that he actually intended to defraud R.S. by supplying him with baking soda instead of drugs, the jury was not required to believe Bailey's version of events. Given the chronology of events, R.S.'s 11:22 p.m. text to Bailey that he had just done a line

9.

(presumably, a line of what R.S. had supplied), R.S.'s failure to read Bailey's 11:29 p.m. response, the absence of any other communication from R.S.'s phone, and the state of R.S's body when he was discovered eight-and-a-half hours later, we cannot say that the jury lost its way in rejecting Bailey's version of events. We conclude that Bailey's conviction was not against the manifest weight of the evidence.

{¶ 21} Accordingly, we find Bailey's first assignment of error not well-taken.

### B. Ineffective Assistance of Counsel

{¶ 22} At trial, by agreement of counsel, the state's final witness—Emily Miller of the Ohio Bureau of Investigation—was taken out of order. She testified after Bailey, the only defense witness. Miller testified that the contents of the baggy found near R.S.'s hand contained carfentanil. In his second assignment of error, Bailey claims that trial counsel was ineffective for failing to object to Miller testifying out of order and failing to request an instruction to the jury concerning the decision to take the witness out of order.

{¶ 23} The state responds that Bailey fails to cite any authority suggesting that it is objectively unreasonable for trial counsel to agree to allow a state's witness to testify out of order. It points out that Miller did not address Bailey's testimony and her testimony was not a surprise because the drug analysis report had been produced to defense counsel. The state maintains that Bailey has also failed to show that he was prejudiced by defense counsel's agreement to call Miller out of order, particularly given the overwhelming evidence of his guilt. It posits that the alleged error in agreeing to allow Miller to testify

10.

after his case-in-chief constitutes trial strategy that does not rise to the level of ineffective assistance of counsel.

{¶ 24} Properly licensed Ohio lawyers are presumed competent. *State v. Banks,* 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 25} There are "countless ways to provide effective assistance in any given case." *Strickland* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. In matters involving trial strategy, "courts will generally defer to the judgment of trial counsel, even where 'another and better strategy' might have been available." *State v. Newsome*, 11th Dist. Ashtabula No. 2003-A-0076, 2005-Ohio-3775, ¶ 8, quoting *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). "A court will only consider reversing on these grounds where the choice of trial strategy so

11.

deviates from the standard of reasonableness 'that ordinary trial counsel would scoff at hearing of it.'" *Id.,* quoting *State v. Burgins*, 44 Ohio App.3d 158, 160, 542 N.E.2d 707 (4th Dist.1988).

{¶ 26} First, counsel's decision to agree to the state presenting Miller out of order was trial strategy that does not support Bailey's claim of ineffective assistance of counsel. In *State v. Messenger,* 10th Dist. Franklin No. 19AP-879, 2021-Ohio-2044, 174 N.E.3d 425, ¶ 70, *aff'd, State v. Messenger,* Slip Opinion No. 2022-Ohio-4562—as in the present case—defense counsel agreed to allow the state to present a witness out of order, which resulted in the defendant not being the last to testify. The defendant argued that "the lack of objection to this out-of-order testimony amounted to deficient performance" because "the only reasonable strategy was to have [appellant] be the last witness to testify." *Id.* The Tenth District held, however, that trial counsel's decision to be accommodating of the trial court's schedule and not to object to the order of witnesses was "a matter of trial strategy" that did not support the defendant's claim of ineffective assistance of counsel. We agree with the Tenth District. Defense counsel was not ineffective for agreeing to accommodate this scheduling matter.

{¶ 27} Second, the court specifically explained to the jury that it was allowing the state to present its witness out of order in order to make the most efficient use of time.[2]

---

[2] Evid.R. 611 permits the trial court to exercise reasonable control over "the mode and order of interrogating witnesses and presenting evidence." One objective for vesting this

12.

Before Bailey testified, the court told the jury: "Folks, we're actually going to take a witness out of order now. Obviously, you know, you've been hearing witnesses for The State of Ohio. And we're going to take a witness for the defense, at this point, to fill in some time on your case, to make sure that you're not here any longer than one more day." The next day of trial, before Miller testified, the court reminded the jury: "We're back to the State's case now." Accordingly, we find that the trial court advised the jury of the procedural anomaly and the reason for it. There was no need for defense counsel to request an instruction because one was given.

{¶ 28} Finally, Bailey fails to explain how he was prejudiced by Miller testifying out of order. In *State v. Carte,* 8th Dist. Cuyahoga No. 72955, 1999 WL 13962, *15 (Jan. 14, 1999), the Eighth District found that the appellant failed to show that his counsel was ineffective where he presented no evidence that he was prejudiced by trial counsel's agreement to present defense witnesses before the state had concluded its case-in-chief. *See also Messenger* at ¶ 70 ("[Appellant] does not articulate any prejudice resulting from this strategic decision."). We reach the same conclusion here. Bailey has failed to articulate prejudice, therefore, his claim of ineffective assistance of counsel must fail.

{¶ 29} Accordingly, we find Bailey's second assignment of error not well-taken.

---

authority in the trial court is to allow it to "avoid needless consumption of time." Evid.R. 611(A)(2).

13.

### III.    Conclusion

{¶ 30} Drawing all inferences in favor of the state, the state presented sufficient evidence that Bailey sold carfentanil to R.S., causing R.S.'s death.  The jury did not lose its way when it rejected Bailey's testimony that the "drug" he sold to R.S. was really baking soda.  We, therefore, find Bailey's first assignment of error not well-taken.

{¶ 31} Counsel was not ineffective for failing to object to the state calling a witness out of order.  This was trial strategy, the trial judge explained to the jury why the witness was being presented out of order, and no prejudice resulted to Bailey.  We, therefore, find Bailey's second assignment of error not well-taken.

{¶ 32} We affirm the May 27, 2022 judgment of the Huron County Court of Common Pleas.  Bailey is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                          JUDGE
Christine E. Mayle, J.

Gene A. Zmuda, J.                          _____
CONCUR.                                               JUDGE

                                                      _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.