[Cite as *State v. Walton*, 2023-Ohio-1101.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                   Court of Appeals No.  L-22-1159

    Appellee                                    Trial Court No.  CR0202102643

v.

Kevondrae Walton                                **DECISION AND JUDGMENT**

    Appellant                                   Decided:  March 31, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**SULEK, J.**

**{¶ 1}** Appellant, Kevondrae Walton, appeals the June 24, 2022 judgment of the
Lucas County Court of Common Pleas which, following a jury trial convicting him of
felonious assault and tampering with evidence, sentenced him to a total of 9.5 to 13 years
of imprisonment.  For the reasons that follow, the trial court's judgment is affirmed.

# I. Background

{¶ 2} On October 12, 2021, the state secured an indictment against Walton for attempted murder, felonious assault, and tampering with evidence. All charges stem from a hit and run accident involving a vehicle driven by Walton and the victim/bicyclist. On June 21, 2022, the matter proceeded to a jury trial where the following relevant evidence was presented.

{¶ 3} Three eyewitnesses testified. The first, L.S., testified that on September 17, 2021, she was traveling northbound on Suder Avenue in Toledo, Lucas County, Ohio, when she observed a vehicle swerve and knock a man off his bicycle. The vehicle and the bicyclist were both traveling southbound with the bicyclist close to the curb.

{¶ 4} The prosecutor asked L.S. whether she thought the collision was accidental. Walton's counsel objected stating that the question called for a legal conclusion. The state countered that opinion testimony is admissible under Evid.R. 701 when based on the perception of the witness. The trial court allowed the state to lay a foundation for the testimony. L.S. then testified that she observed the victim traveling in the bike lane and that the vehicle swerved into the lane and hit him. Over objection, she stated that it appeared intentional. The court overruled the objection. L.S. explained that after hitting the bicyclist, the vehicle crashed into a pole, swerved around, and advanced towards her vehicle; she pulled into a driveway to avoid a collision. L.S. then called police. On

2.

cross-examination, L.S. acknowledged the possibility that the driver could have been distracted by something in his vehicle and unintentionally struck the victim.

{¶ 5} M.B. then testified that she and her husband had been traveling on Suder Avenue when a vehicle cut them off. It pulled into a driveway and backed out; the driver then "gunned it," swerved, and hit a bicyclist. M.B. and her husband exited their vehicle and checked on the victim; others approached so they got back in their vehicle and followed the driver. M.B. stated that the driver pulled in to nearby Ottawa Cove Apartments. There they witnessed the driver, a black male, taking the license plate off the car. During cross-examination, M.B. stated that the driver was alone in the vehicle. She also stressed that the driver was not distracted when he hit the bicyclist.

{¶ 6} The third eyewitness, J.H., a resident on Suder Avenue, testified that she was on a stepladder painting her front porch when she heard a crash. She observed the victim fly from the bicycle and over the mailboxes where he landed on his back. The vehicle spun around and hit a pole; it then fled the scene.

{¶ 7} Toledo Fire and Rescue Lieutenant James Martin testified that his crew responded to the scene on Suder Avenue and found police applying pressure to a substantial wound on the victim's neck. The victim had multiple lacerations, abrasions, and bruises, and he was noncompliant and combative. Lieutenant Martin stated that his injuries appeared to be life threatening so he ordered an advanced life support ambulance.

3.

{¶ 8} Toledo Police Officer Colin O'Rourke responded to the accident and interviewed multiple witnesses. He secured the scene to allow the scientific investigation unit to collect physical evidence and take photographs. By agreement of the parties, O'Rourke's body cam video was played to the jury with the audio muted to prevent prejudice from the victim's vocalizations. Officer O'Rourke narrated the video including his examination of the victim's fanny pack which contained a fully loaded .38 revolver.

{¶ 9} Toledo Police Detective Jeffrey Sharp also responded to the scene. He learned that after fleeing the scene, the driver parked the vehicle involved at the Ottawa Cove Apartments. A surveillance officer was stationed there. He stated that due to the victim's condition, the case was treated as a potential homicide investigation.

{¶ 10} Arriving at the apartment complex, Detective Sharp observed heavy damage to the vehicle at issue— a Buick Rendezvous. The windshield, back window, and other windows were broken out. The front and rear of the vehicle had also been heavily damaged and the rear bumper was missing. A matching Buick Rendezvous rear bumper was left at the accident scene. The vehicle's registration tag and front license plate, face up, were visible in the open trunk area. The vehicle was registered to Walton; Detective Sharp identified him in court.

{¶ 11} Sharp testified that officers had already contacted management to obtain video surveillance footage. The footage depicted Walton, who was carrying a license plate, and his girlfriend walk into an apartment building and enter one of the units. Since

4.

under police surveillance, no one had left the building. Officer Sharp and his partner knocked on the door of the unit that Walton and his girlfriend entered and were greeted by two other individuals who stated they were residents. They indicated that two young children were the only other occupants. Detective Sharp testified that he observed what appeared to be blood and automotive glass on and near the front door.

{¶ 12} Upon questioning, one of the individuals recovered a license plate matching the one found in the vehicle driven by Walton. At that point, Sharp informed the individuals of the surveillance video showing Walton and his girlfriend enter the apartment. Following the individuals' consent to a search of the apartment, Walton and his girlfriend presented themselves to the officers. They were separately transported to the police department for questioning.

{¶ 13} Shortly thereafter, Detective Sharp learned that at 11:36 a.m., Walton's girlfriend called 911 from the Ottawa Cove Apartments and reported the vehicle stolen. The 911 call reporting that a bicyclist had been struck was received at 11:12 a.m.

{¶ 14} During Sharp's testimony, Walton's interrogation video was played for the jury. Walton did not admit his involvement, but he maintained that the crash was an accident. Detective Sharp then testified about a recorded telephone call Walton made to his mother while jailed on the charges. The call was played for the jury. Walton stated that a white man was hit and that he knew him. The race of the bicyclist had not been discussed during the prior interrogation. On cross-examination, Sharp agreed that the

5.

department receives false calls of stolen vehicles and that a variety of reasons can cause a driver to leave the scene of an accident.

{¶ 15} The state rested and defense counsel then moved for acquittal under Crim.R. 29; the motion was denied. The defense then rested and the renewed motion for acquittal was denied. The jury returned a not guilty verdict as to attempted murder but found Walton guilty of felonious assault and tampering with evidence. Following his June 24, 2022 sentencing, Walton commenced this appeal.

## II. Assignments of Error

I. The trial court abused its discretion by allowing a witness to opine about Walton's state of mind, pursuant to Evid.R. 701.

II. The trial court abused its discretion by denying appellant's motion for acquittal on the basis of insufficient evidence, as to the charge of felonious assault, pursuant to Crim.R. 29, based on the disputed admission of the opinion testimony.

III. In the alternative, the conviction was against the manifest weight of the evidence.

## III. Discussion

### A. Evid.R. 701

{¶ 16} Walton's first assignment of error challenges the admission of lay opinion testimony, over objection, regarding whether Walton intentionally struck the victim.

6.

Walton challenges whether the lay opinion testimony at issue bears a "reasonable relationship to the attainment of some legitimate governmental objective."

{¶ 17} Evid.R. 701 provides a two-part requirement for the admission of lay opinion testimony:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Trial courts are granted broad discretion in the admission or exclusion of evidence under Evid.R. 701. *State v. Tuggle*, 6th Dist. Lucas No. L-09-1317, 2010-Ohio-4162, ¶ 37, citing *City of Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989).

{¶ 18} "When assessing lay opinion testimony, 'the critical point is whether the opinion of the lay witness will truly be helpful to the jury; i.e., if the basic facts are clear and the jury is able to draw its own conclusions, the lay opinion is not admissible.'" *State v. Kamer*, 6th Dist. Wood No. WD-20-084, 2022-Ohio-2070, ¶ 105, quoting *State v. O'Brien*, 2013-Ohio-13, 986 N.E.2d 531, ¶ 45 (11th Dist.).

{¶ 19} In *O'Brien*, the defendant faced multiple charges relating to striking and killing his ex-girlfriend with his vehicle. His general defense was that the incident was

7.

an accident. At trial, two lay eyewitnesses testified that their observations led them to believe that defendant acted intentionally. *Id.* at ¶ 40. Concluding that the testimony was admissible under Evid.R. 701, the court of appeals held:

> In this case, the trial record readily demonstrates that the testimony of the two lay witnesses was based upon their own perception of the fatal event as it occurred before them. Furthermore, even though the testimony of the two witnesses was relatively clear as to the events, the specific factual issue of whether appellant acted purposefully was not so obvious. In this regard, the evidence showed that the victim did not walk into the road until a few seconds before appellant backed up the car. In addition, there was evidence that appellant turned his head to look behind him at essentially the same time he hit the accelerator to back up. Under such circumstances, the opinion of each lay witness was admissible under Evid.R. 701 because the disputed testimony assisted the jury in understanding the facts as they related to the basic question of appellant's intent.

*Id.* at ¶ 46. *See State v. Andre*, 8th Dist. Cuyahoga No. 101023, 2015-Ohio-17, ¶ 25-26.

{¶ 20} Similar to *O'Brien*, L.S.'s and M.B.'s testimony was based on their personal observations and was helpful to the jury in determining whether Walton had the intent necessary to convict him under the attempted murder or felonious assault statutes.

8.

**{¶ 21}** Walton also contends that the admission of such evidence resulted in inconsistent verdicts. It is well-settled that "'inconsistency in a verdict does not arise out of inconsistent responses to different counts; it only arises out of inconsistent responses to the same count.'" *State v. Eldridge*, 6th Dist. Lucas No. L-18-1084, 2019-Ohio-1265, ¶ 23, quoting *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraph one of the syllabus.

**{¶ 22}** Both charges against Walton stem from the same underlying conduct; however, each count has a distinct mental state element. Felonious assault, in violation of R.C. 2903.11(A)(1), provides that no person shall *knowingly* cause serious physical harm to another or to another's unborn. Knowingly is defined as acting when:

> the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B)

**{¶ 23}** Conversely, to find Walton guilty of attempted murder, R.C. 2903.02 and R.C. 2923.02, the state was required to prove that, if successful, Walton would have

9.

"*purposely* cause[d] the death of another[.]" (Emphasis added.) "A person acts purposely when it is the person's specific intention to cause a certain result[.]" R.C. 2901.22(A).

{¶ 24} Therefore, Walton's conviction for felonious assault and acquittal for attempted murder demonstrates that the jury believed the state's theory that Walton knowingly hit the victim with his vehicle, but they were not convinced that the purpose of his actions was to kill the victim. Such verdicts are not inconsistent. Walton's first assignment of error is not well-taken.

## B. Sufficiency of the Evidence

{¶ 25} In his second assignment of error, Walton contends that his felonious assault conviction was not supported by sufficient evidence. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Bailey*, 6th Dist. Huron No. H-22-008, 2023-Ohio-657, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing such a challenge, a court "must consider all evidence admitted at trial, including the improperly admitted evidence * * *." *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, 176 N.E.3d 720, ¶ 29. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the

10.

syllabus. Accordingly, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16, quoting *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13. "Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law." *Richardson* at ¶ 13.

{¶ 26} As set forth above, felonious assault, R.C. 2903.11(A)(1) and (D), provides that "[n]o person shall knowingly * * * cause or attempt to cause serious physical harm to another." Knowingly is statutorily defined as action "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 27} Walton's argument is that absent the improperly admitted opinion testimony as to his intent, the jury's verdict is not supported by sufficient evidence. As set forth above, perceptions of a lay witness which aid the jury are admissible under Evid.R. 701. Additionally, testimony regarding a driver's swerving, accelerating, or speed can independently provide sufficient evidence of intent. *See State v. Stevens*, 6th Dist. Lucas No. L-19-1219, 2020-Ohio-6981, ¶ 33; *State v. Brown*, 8th Dist. Cuyahoga No. 90398, 2008-Ohio-3668, ¶ 21.

{¶ 28} At trial, L.S. testified that Walton swerved to hit the victim, spun around and hit a pole and then fled the scene. She stated that Walton's actions appeared intentional. M.W. stated that Walton cut off her vehicle and pulled into a driveway,

11.

turned around and, after accelerating, struck the victim. M.W. also testified that Walton's actions appeared intentional. Accordingly, Walton's felonious assault conviction was supported by sufficient evidence and his second assignment of error is not well-taken.

## C. Weight of the Evidence

{¶ 29} In his third assignment of error, Walton alternatively argues that his felonious assault conviction was against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, unlike a sufficiency of the evidence analysis, appellate courts do not view the evidence in a light most favorable to the state. Instead, the court sits as a "'thirteenth juror'" and examines "'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Thus, the court is tasked to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 30} Reviewing the entire proceeding, the jury did not lose its way in resolving conflicting evidence. Such evidence included eyewitness L.S.'s acknowledgement that Walton could have been distracted while driving and eyewitness M.B.'s inaccurate

12.

observation that Walton was alone in the car and that she could not deduce exactly how fast Walton was going. The jury, however, was free to believe the critical portions in the eyewitness testimony including that Walton cut off a driver, abruptly turned around, accelerated, and swerved to hit the victim. After crashing his vehicle into a pole, he fled the scene. Walton's felonious assault conviction was not against the manifest weight of the evidence, and his third assignment of error is not well-taken.

## IV. Conclusion

{¶ 31} Upon due consideration, the June 24, 2022 judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, Walton is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____
                                             JUDGE
Christine E. Mayle, J.

Charles E. Sulek, J. _____
CONCUR.                                      JUDGE

_____
                                             JUDGE

13.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.