[Cite as *State v. Pinkerman*, 2024-Ohio-1150.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                        :

    Plaintiff-Appellee,          : CASE NO. 23CA5

    v.                           :

BRIAN PINKERMAN,                      : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.         :

_____

APPEARANCES:

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and
Steven K. Nord, Assistant Prosecuting Attorney, Ironton, Ohio, for
appellee.

Autumn D. Adams, Toledo, Ohio, for appellant[1].

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:3-21-24
ABELE, J.

{¶1} This is an appeal from a Lawrence County Common Pleas
Court judgment of conviction and sentence. Brian Pinkerman,
defendant below and appellant herein, assigns the following errors
for review:

---

[1] Different counsel represented appellant during the trial
court proceedings.

LAWRENCE, 23CA5

FIRST ASSIGNMENT OF ERROR:

"THE JURY ERRED IN CONVICTING PINKERMAN OF
CORRUPTING ANOTHER WITH DRUGS AS THE STATE
FAILED TO PRESENT SUFFICIENT EVIDENCE HE
FURNISHED DRUGS TO E.B.."

SECOND ASSIGNMENT OF ERROR:

"THE MANIFEST WEIGHT OF THE EVIDENCE DID NOT
PROVE BEYOND A REASONABLE DOUBT PINKERMAN
TRAFFICKED IN FENTANYL."

THIRD ASSIGNMENT OF ERROR:

"THE JURY'S VERDICT OF GUILTY TO INVOLUNTARY
MANSLAUGHTER WAS AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE."

{¶2} On July 26, 2022, a Lawrence County Grand Jury returned an indictment that charged appellant with (1) one count of involuntary manslaughter in violation of R.C. 2903.04(A), a first-degree felony, (2) one count of corrupting another with drugs in violation of R.C. 2925.02(A)(3), a second-degree felony, and (3) one count of trafficking in fentanyl in violation of R.C. 2925.03(A)(1), a fifth-degree felony. Appellant entered a not guilty plea.

{¶3} On June 29, 2022, Lawrence County Sheriff's Deputy Cody Pizelli responded to a call regarding a possible overdose and death. Pizelli found E.B. deceased inside her apartment, and E.B.'s mother informed Pizelli about E.B.'s previous drug problems.

LAWRENCE, 23CA5

Pizelli also observed a bag on the kitchen counter that appeared to contain powder residue and aluminum foil that appeared to have discolored burn marks. Pizelli photographed the scene and requested an investigator from the drug task force.

{¶4} Montgomery County Deputy Coroner Dr. Sean Swiatkowski testified that his examination of the victim revealed no natural disease process, trauma, or injury. The toxicology report indicated that E.B.'s system contained fentanyl, norbuprenorphine (Suboxone), hydrocodone, hydromorphone, temazepam (a hypnotic for insomnia), amitriptyline (an antipsychotic), and two metabolites of fentanyl. Swiatkowski concluded that "fentanyl intoxication" caused E.B.'s death because "all of the other drugs were at a lower level that wouldn't * * * affect her * * * and she had no natural disease process. So the medical decision is it's fentanyl intoxication." A typical fentanyl concentration range that can cause fatality is 3-28, and E.B. had a concentration of 48. Also, Ohio Bureau of Criminal Investigation Forensic Scientist Lauren Gowins testified that her analysis of the white powder revealed "methamphetamine and fentanyl" with a weight of "0.87 grams plus or minus 0.04 grams."

{¶5} After Lawrence County Sheriff's Special Deputy and Investigator Kenneth Adkins arrived at E.B.'s residence, Adkins

spoke with the victim's mother and other law enforcement, then photographed the apartment. Adkins collected (1) from the kitchen counter a piece of notebook paper that contained a white powdery substance, (2) a plastic baggie with residue, (3) discolored aluminum foil from the kitchen (typically used to consume drugs), (4) a smartphone in a black case, (5) a smartphone in a blue case, (6) another piece of foil with burn marks near the nightstand, (7) a Bic pen with no internal components, commonly used to consume illicit substances, and (8) $167 in the kitchen cabinet in a glucose test kit. Adkins later obtained appellant's DNA sample and retrieved a red notebook from his apartment. Adkins explained that the notebook paper had been cut in a manner consistent with drug use.

{¶6} Investigator Adkins further testified that the Ohio Narcotics Intelligence Center (ONIC), a state agency that supports law enforcement with intelligence gathering and data analysis, provided cell phone data on a flash drive. Upon inspection, Adkins noticed text messages between the victim "and a contact in the phone titled Brian and a phone number." After Adkins noticed a Facebook Messenger conversation between the victim and appellant's account, Adkins used the Ohio Law Enforcement Gateway (OHLEG) to identify appellant's driver's license and address.

{¶7} Subsequently, Investigator Adkins obtained search warrants for the victim's Facebook account data and phone messages. When Adkins extracted data from appellant's cell phone, he found text messages between the victim and appellant regarding the victim "seeking something stronger * * * because the medication that she had been prescribed wasn't helping the pain that she was experiencing from a recent surgery." In addition, Adkins found conversations regarding "amounts, how much it would cost for a certain amount of drugs," "how long it will take to go get it, if the money was available," and other drug-related conversations. E.B.'s call log revealed that, after the June 26, 2022 text messages between E.B. and appellant, the last activity on E.B.'s phone is an unanswered call to appellant's phone around 5:00 or 5:30 a.m.

{¶8} Investigator Adkins contacted appellant and advised him of his Miranda rights. During a recorded interview, appellant initially denied he obtained fentanyl for the victim, but later, when asked if he felt responsible for the victim's death, appellant stated, "I got it and gave it to her, but I begged her not to do it and I can't control how much she did." Text messages supported appellant's statement that, pursuant to E.B.'s instructions, appellant retrieved money from a pickup truck on E.B.'s property,

procured drugs in West Virginia, and placed the drugs on E.B.'s porch in a black tennis shoe. Appellant added, "If she didn't get it from me, she would have got it from someone else."

{¶9} In a later phone call between appellant, Investigator Adkins and other law enforcement, appellant stated, "Whoever she [the victim] called after [5:28 a.m.] is where she got her sh*t." Appellant also claimed that he "gave [E.B.] a half gram and added a half gram of powdered sugar." After appellant blamed someone named Julia McMillion for selling E.B. the fatal dose, Adkins interviewed McMillion. Adkins, however, did not believe appellant's accusations against McMillion based on his interview and the fact that no contact occurred between the victim and McMillion.

{¶10} At the close of the state's case, the trial court denied appellant's Crim.R. 29 motion for judgment of acquittal. At the conclusion of the trial and after reviewing the evidence, the jury found appellant guilty as charged. The trial court merged all three counts for purposes of sentencing and the state elected to sentence under count one. The court thereupon sentenced appellant to (1) serve 11 to 16.5 years in prison on count one, subject to a post-release control term, and (2) pay fines and costs. This appeal followed.

LAWRENCE, 23CA5

I.

{¶11} In his first assignment of error, appellant asserts that the state failed to present sufficient evidence to prove beyond a reasonable doubt that appellant furnished drugs to the victim. In particular, appellant argues that the state did not adduce sufficient evidence that the victim consumed a drug that appellant supplied because (1) law enforcement found multiple types of drugs in her home, none of which matched the particular drugs appellant provided, and (2) the types of drugs in the victim's system at the time of her death are not the type of drugs the state alleged appellant supplied to the victim.

{¶12} A claim of insufficient evidence invokes a due process concern and raises the question of whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Schroeder*, 2019-Ohio-4136, 147 N.E.3d 1, ¶ 59 (4th Dist.), citing *State v. Blanton*, 2018-Ohio-1278, 110 N.E.3d 1, ¶ 13 (4th Dist.); *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 22; *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing the evidence's sufficiency, the adequacy of the evidence is the focus; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins*, syllabus.

LAWRENCE, 23CA5

{¶13} The standard of review for an appellate court in an evidence sufficiency inquiry is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991); *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 207. Further, an assignment of error based on sufficiency of the evidence challenges the state's prima facie case's legal adequacy, not its rational persuasiveness. *State v. Anderson*, 4th Dist. Highland No. 18CA14, 2019-Ohio-395, ¶ 13. Therefore, when an appellate court reviews a sufficiency of the evidence claim, the court must construe the evidence in a light most favorable to the prosecution. *State v. Dunn*, 4th Dist. Jackson No. 15CA1, 2017-Ohio-518, ¶ 13; *Wickersham, supra*, ¶ 23; *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996). Consequently, a reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds cannot reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 326 (2001).

{¶14} In the case sub judice, in addition to involuntary

LAWRENCE, 23CA5

manslaughter and trafficking in fentanyl, the jury found appellant guilty of corrupting another with drugs in violation of R.C. 2925.02(A)(3). That statute provides "No person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become a person with drug dependency." R.C. 2925.02(A)(3).

{¶15} Appellant contends that, because the state failed to present any evidence as to the victim's precise time of death, the state could not prove that appellant's actions contributed to her death. Appellant points out that, to find appellant guilty of that charge, the trial court instructed the jury that they had to find that appellant, by any means, administered or furnished fentanyl to the victim and thereby caused her serious physical harm. Appellant, however, asserts that the state presented no evidence about appellant's presence when the victim ingested drugs or that appellant "furnished" the particular drugs that caused the victim's death.

{¶16} After our review, we believe that the state adduced sufficient evidence to prove that appellant supplied a fentanyl compound to the victim. Appellant acknowledged in his first

recorded interview with law enforcement that he provided drugs to the victim. When asked if he purchased heroin or fentanyl for the victim, appellant responded, "yeah, I went and got her some * * * a gram * * * but I told her, 'be careful.'" Appellant further stated that he retrieved E.B.'s payment from a truck on the victim's property, purchased drugs in Huntington from "[his] guy," left drugs in a shoe on her porch, and later "kept calling to check on her." Appellant also knew about E.B.'s addiction and had purchased drugs for her in the past. When asked whether he supplied heroin or fentanyl to the victim, appellant stated, "It was heroin - but realistically there is no heroin anymore - it's all fentanyl." Cell phone records also confirmed the transaction with text exchanges between appellant and the victim. Consequently, we believe that sufficient evidence exists to support the jury's determination that appellant "furnish[ed] to another * * * a controlled substance." R.C. 2825.02(A)(3).

{¶17} The second part of the corrupting another with drugs statute requires that the furnishing of the controlled substance caused serious physical harm to the other person. R.C. 2925.02(A)(3). Here, Investigator Adkins testified that he discovered in the victim's apartment a piece of notebook paper that contained a powdery substance. A field test revealed the substance

LAWRENCE, 23CA5

to be fentanyl.  Later, the State Bureau of Criminal Investigation lab confirmed that the substance tested positive for fentanyl and methamphetamine.  At trial, the coroner testified that the victim's system contained fentanyl at a concentration of 48 nanograms per milliliter, with 3 to 28 sufficient to cause death.  The coroner further testified that the victim died of "fentanyl intoxication."

{¶18} Appellant argues that what transpired between June 26 and June 29, 2022 is unknown and the state did not present evidence regarding the victim's time of death.  In fact, appellant claims, the coroner "hinted that [the victim] may have laid in her house for a 'day or two' before being found."  However, the coroner's reference to time related to minor dilation of the victim's left and right ventricles of her heart, "[a]nd that can be explained by either she was laying in her home for a day or two, and plus when we got the call, it was the 30th.  They said they found her on the 29th.  I didn't perform the autopsy until the first, so that was two more days.  So as the body starts to lay there and wait, sometimes you get some decompositional changing in dilation of the heart."  Further, as noted above, the last activity on the victim's phone occurred around 5:30 a.m. on June 27, when she attempted to call appellant, a call that went unanswered.  Moreover, the drugs found in appellant's apartment had been packed in a manner that appellant

acknowledged that he packages drugs, a gram packaged in "a piece of paper folded up like an envelope."

**{¶19}** In *State v. Bailey,* 2023-Ohio-657, 210 N.E.3d 1 (6th Dist.), the victim texted his marijuana dealer at 9:21 p.m. and asked if he sold anything "stronger."  Bailey offered the victim crack cocaine and arrived shortly after 11:00 p.m.  At 11:21 p.m., Bailey texted, "Let me know how that is."  At 11:22 p.m., the victim texted, "Not what I was expecting, no numbness, but I just did a line, so we'll see."  At 11:29 p.m., Bailey texted, "That was work, you not supposed to do lines [laughing emoji]."  The victim did not read the 11:29 p.m. text.  At 8:00 a.m. the next morning, the victim's girlfriend found him dead, in his recliner with his arm hanging over the side of the chair.  On the floor, directly beneath his hand, the victim's girlfriend found a straw and a baggy of white powder that later tested as carfentanil, a fentanyl analog used as tranquilizer for elephants and other large mammals, exponentially more potent than fentanyl.  Toxicology tests revealed carfentanil in a concentration of .15 ng/ML, and a blood alcohol concentration of .10.  The coroner determined the victim's cause of death "combined drug intoxication -carfentanil, alcohol."  *Id.* at ¶ 2-3.

**{¶20}** The state charged Bailey with corrupting another with

LAWRENCE, 23CA5

drugs, trafficking, and involuntary manslaughter.  Bailey challenged the sufficiency of the evidence and argued that he did not sell the victim narcotics - but rather baking soda "to rip him off."  The court noted that the state presented evidence that (1) the victim asked to purchase narcotics from Bailey, (2) the victim texted Bailey and said he had done a line and Bailey told him, "that was work, you['re] not supposed to do lines," (3) the victim failed to read the last message and did not use his phone again, (4) the victim's girlfriend found him dead in his chair at 8:00 a.m., (5) the victim's body was already cold and rigor mortis had occurred, (6) a straw and a bag of powder were found beneath the victim's hand, (7) testing revealed that the baggy contained carfentanil, and (8) the autopsy concluded that ingesting carfentanil caused the victim's death.  *Id.* at ¶ 15.  The Sixth District observed that, when an appellate court examines a sufficiency of the evidence claim, a court must view the probative evidence "*and inferences reasonably drawn therefrom*" in a light most favorable to the prosecution.  (Emphasis added.)  *Id.* at ¶ 16, citing *State v. Filiaggi,* 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999).  The court stated that the reasonable inference to be drawn is that, after Bailey delivered to the victim a baggy of powder, a baggy of powder was found near the victim's body, the baggy

contained carfentanil, and carfentanil caused the victim's death. Thus, the evidence established that the baggy Bailey delivered must have contained carfentanil. Drawing that inference in favor of the state, the court concluded that the state presented sufficient evidence that Bailey sold carfentanil to the victim, and the ingestion of that drug led to his death. *Id.* at 16.

{¶21} In the case sub judice, we observe that the state adduced evidence at trial that appellant furnished a controlled substance to the victim, including text messages between the victim and appellant concerning the drug transaction. The state also played a recording of appellant's police interview in which he admitted that he sold fentanyl to the victim. The evidence also shows that the victim last communicated with appellant, and the victim died as a result of fentanyl intoxication.

{¶22} After our review of the probative evidence with the inferences reasonably drawn therefrom in a light most favorable to the prosecution, we believe that the state adduced sufficient evidence, if believed, to prove each element of the offense and to support appellant's corrupting another with drugs conviction.

{¶23} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶24}** In his second assignment of error, appellant asserts that his conviction for trafficking in fentanyl is against the manifest weight of the evidence. Appellant argues that he sold the victim heroin, not fentanyl or a fentanyl-related compound.

**{¶25}** After a court of appeals determines that sufficient evidence supports a trial court's judgment, that court may nevertheless conclude that a judgment is against the weight of the evidence. *Dunn, supra*, at ¶ 15; *Wickersham, supra*, at ¶ 24; *Thompkins, supra*, 78 Ohio St.3d at 387. "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'" *Wickersham, supra*, at ¶ 24, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶26}** When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider witness credibility. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *Schroeder, supra*, at ¶ 61; *Dunn, supra*, at ¶ 16; *Wickersham, supra*, at ¶ 25. Because the trier of fact sees and hears the witnesses, an appellate court will afford substantial deference to a trier of fact's credibility determinations. *Schroeder* at ¶ 62. The jury has the benefit of seeing witnesses testify, observing facial expressions and body language, hearing voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

**{¶27}** To decide whether the case sub judice is an exceptional case in which the evidence weighs heavily against conviction, this court must review the record, weigh the evidence and all reasonable inferences, and consider witness credibility. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court may reverse a conviction if the trier of fact clearly lost its way in resolving conflicts in the evidence and created a manifest miscarriage of justice. *State v. Benge*, 4th Dist. Adams

LAWRENCE, 23CA5

No. 20CA1112, 2021-Ohio-152, ¶ 28.

{¶28} R.C. 2925.03, the trafficking statute, provides, "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog." Here, appellant contends that he sold the victim heroin, not fentanyl or a fentanyl-related compound. First, we point out that selling any controlled substance violates R.C. 2925.03(A)(1). Second, we conclude that, based upon our review of the evidence adduced at trial, appellant's trafficking in fentanyl conviction is not against the manifest weight of the evidence. In *State v. Potee*, 2017-Ohio-2926, 90 N.E.3d 58 (12th Dist.), a jury found Potee guilty of involuntary manslaughter, corrupting another with drugs, trafficking in heroin, and aggravated trafficking in fentanyl after he supplied drugs to a couple. One victim died and the other overdosed, but survived. *Id.* at ¶ 1-8. The evidence showed that Potee provided directions to the victims, helped facilitate the heroin transaction between Potee's drug dealer and the victims, and revealed that the victim would not likely have obtained heroin from Potee's dealer without his assistance. *Id.* at ¶ 4.

{¶29} Potee asserted that, because the state based its case on a single transaction of heroin between himself and the victim, the

LAWRENCE, 23CA5

state failed to prove how the drugs exchanged in this particular transaction resulted in the victim's death, but resulted only in the second victim's overdose.  After the court cited testimony from the surviving victim regarding each stage of the transaction, coupled with text messages and call logs between the deceased victim and appellant on the day of the transaction, the court concluded that ample credible evidence supported appellant's conviction for corrupting another with drugs.  Thus, the court concluded that the manifest weight of the evidence supported the convictions.  *Id.* at ¶ 31, 37.


**{¶30}** In the case at sub judice, appellant contends that the state failed to "put fentanyl in Pinkerman's hands."  However, in his first recorded statement appellant said, "It was heroin - but realistically there is no heroin anymore - it's all fentanyl."  In addition, as the state points out, the jury heard evidence that Deputy Adkins found a notebook in appellant's residence that contained white paper similar to the paper found at the victim's apartment that contained fentanyl.  Further, in appellant's first recorded statement he said he obtained drugs from his dealer packaged "in a piece of paper folded up like an envelope." Finally, the jury heard evidence that the powder in the notebook

paper obtained from the victim's apartment tested positive for fentanyl, both the field test and the BCI analysis, and the coroner concluded to a reasonable degree of medical certainty that the victim died of fentanyl intoxication.

{¶31} Thus, after our review of the record, we conclude that ample competent, credible evidence supports appellant's trafficking conviction and is not against the manifest weight of the evidence. Weighing particularly heavily in favor of conviction are the cell phone communications between the victim and appellant that discussed the drug transaction and appellant's admission that he sold heroin/fentanyl to the victim.

{¶32} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.


III.

{¶33} In his final assignment of error, appellant asserts that the jury's involuntary manslaughter guilty verdict is against the manifest weight of the evidence. Specifically, appellant contends that, because the state failed to prove that appellant corrupted the victim with drugs or that appellant trafficked in fentanyl, the state did not prove the elements of involuntary manslaughter.

LAWRENCE, 23CA5

Further, appellant argues that the state failed to prove beyond a reasonable doubt that appellant caused the victim's death.

**{¶34}** As we pointed out in our discussion of appellant's second assignment of error, to satisfy the test for manifest weight of the evidence the state must adduce substantial competent, credible evidence on all the elements of an offense so that the jury can find guilt beyond a reasonable doubt. *State v. Smith,* 2020-Ohio-5316, 162 N.E.3d 898 (4th Dist.), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, syllabus (1988). Once again, witness credibility is a matter entrusted to the trier of fact.

**{¶35}** Involuntary manslaughter is defined as: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). "The culpable mental state of involuntary manslaughter is supplied by the underlying offense." *State v. Johnson,* 8th Dist. Cuyahoga No. 94813, 2011-Ohio-1919, ¶ 54. *See also State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 11 ("'[T]he criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence.'"), quoting *Potee* at ¶ 32.

**{¶36}** According to the jury charge in the case at bar, the

predicate-felony offense in this case is corrupting another with drugs under R.C. 2925.02(A)(3) or trafficking in fentanyl under R.C. 2925.03(A)(1). As we pointed out above, the culpable mental state for trafficking in drugs and for corrupting another with drugs requires a defendant to have acted knowingly. See R.C. 2925.03(A)(1); R.C. 2925.02(A)(3); R.C. 2901.22(B). Here, the statute required the state to prove that appellant caused the victim's death as a proximate result of (1) knowingly selling or offering to sell fentanyl or a compound containing fentanyl, or (2) knowingly furnish a controlled substance and thereby cause serious physical harm.

**{¶37}** In criminal cases, Ohio law generally defines "cause" identically to the definition of "proximate cause" in civil cases. *See, e.g., State v. Emerson*, 2016-Ohio-8509, 78 N.E.3d 1199, ¶ 24 (2d Dist.). *See also State v. Jacobs*, 8th Dist. Cuyahoga No. 51693, 1987 WL 10047, *2 (Apr. 23, 1987)("It is merely a matter of semantics that criminal cases are 'cause' and 'result' and civil cases use 'proximate cause' and 'proximate result.' They mean the same thing. In fact, R.C. 2903.04 (Involuntary Manslaughter) uses 'proximate result' to state the offenses."); *State v. Tschuor,* 3d Dist. Auglaize No. 2-77-31, 1978 WL 215783, *2 (Oct.17, 1978)(proximate-cause theory of criminal liability is applicable

standard under Ohio's involuntary-manslaughter statute); *State v. Carpenter*, 2019-Ohio-58, 128 N.E.3d 857, ¶ 51 (3d Dist.).

**{¶38}** "'The term "proximate result" in the involuntary manslaughter statute involves two concepts: causation and foreseeability.'" *Potee*, 2017-Ohio-2926, 90 N.E.3d 58, at ¶ 33, quoting *State v. Hall*, 12th Dist. No. CA2015-11-022, 2017-Ohio-879, ¶ 71. In *Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, the court considered the argument that sufficient evidence did not support an involuntary manslaughter conviction based on a predicate offense of corrupting another with drugs. The appellate court concluded: "Since we have found Brown's arguments against his conviction for corrupting another with drugs are without merit, his conviction for involuntary manslaughter has a properly supported predicate conviction and withstands the sufficiency of the evidence analysis." *Id.* at ¶ 30.

**{¶39}** Similarly, in the case at bar we concluded that appellant's convictions for trafficking in drugs and corrupting another with drugs are not against the manifest weight of the evidence. Thus, we believe that appellant's involuntary manslaughter conviction has a properly supported predicate conviction. *See State v. Vogt*, 4th Dist. Washington No. 17CA17, 2018-Ohio-4457, ¶ 93.

LAWRENCE, 23CA5

**{¶40}** The Third District court explained the two components of

causation in *Carpenter, supra,* when it instructed:

There are several tests for actual causation, the most common of which is the "but for" test; however, there are circumstances under which the "but for" test is inapplicable and an act or omission can be considered a cause in fact if it was a "substantial" or "contributing" factor in producing the result. *See Hall* at ¶ 72-73; *Emerson* at ¶ 24; *Burrage* at 215, 134 S.Ct. 881; *Christman* at 755, 249 P.3d 680. *See also State v. Wilson*, 10th Dist. Franklin No. 03AP-592, 2004-Ohio-2838, 2004 WL 1221748, ¶ 18 ("The injuries inflicted by the defendant need not be the sole cause of death, as long as they constitute a substantial factor in the death."), citing *State v. Johnson*, 60 Ohio App.2d 45, 52, 395 N.E.2d 368 (1st Dist.1977) ("In homicide cases involving the effect of expert medical testimony as to the cause of death, the general principle is that the injury need not be proved to be the direct or sole cause of death, as long as it started a chain of causation which resulted in or substantially contributed to the death."), aff'd, 56 Ohio St.2d 35, 40-41, 381 N.E.2d 637; Johnson, Cause-In-Fact After *Burrage v. United States*, 68 Fla.L.Rev. 1727, 1747 (2016) (highlighting Ohio as one of the jurisdictions that does not follow the "but-for" test to establish cause-in-fact causation), citing *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995). "In other words, a defendant can still be held criminally responsible where the defendant's conduct combined with other occurrences to jointly result in a legal injury." *Hall* at ¶ 72. *See also Emerson* at ¶ 24 (noting that "an offender's criminal act does not have to be the sole cause of harm"); *State v. Dunham*, 5th Dist. Richland No. 13CA26, 2014-Ohio-1042, 2014 WL 1340627, ¶ 48 (asserting that "there may be more than one proximate cause of an injury" and, to satisfy the causal requirement, cause in fact may be established by proof "that the conduct is a substantial factor in bringing about the injury").

The second component of causation—the legal or "proximate" cause—refers to the foreseeability of the result. *See* Katz, Martin, & Macke, Baldwin's Ohio Practice, Criminal

LAWRENCE, 23CA5

Law, Section 96:4 (3d Ed.2018). *See also Hall* at ¶ 71; *State v. Bacon*, 6th Dist. Lucas No. L-14-1112, 2016-Ohio-618, 2016 WL 698033, ¶ 83 ("Proximate cause has been defined as ' "a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience." ' "), quoting *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, 2013 WL 4137378, ¶ 23, quoting *State v. Muntaser*, 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, 2003 WL 22455703, ¶¶ 26-27; Nere, 425 Ill.Dec. at 652, 115 N.E.3d 205, 2018 WL 4501039, at *7 (proximate cause "means that the result that actually occurs 'must be enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case of crimes of intention), or the result or manner which his reckless or negligent conduct created a risk of happening (in the case of crimes of recklessness and negligence) that the defendant may fairly be held responsible for the actual result.' "), quoting 1 LaFave at 630-31. A " 'defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of risk created by his conduct.' " *State v. Sabo*, 3d Dist. Union No. 14-09-33, 2010-Ohio-1261, 2010 WL 1173088, ¶ 25, quoting *State v. Losey*, 23 Ohio App.3d 93, 95, 491 N.E.2d 379 (10th Dist.1985). " '[T]hat means that death [or serious physical harm] reasonably could be anticipated by an ordinarily prudent person as likely to result under these or similar circumstances.' " *Id.*, quoting *Losey* at 95, 491 N.E.2d 379.

*Id.* at ¶ 52-53.

**{¶41}** Turning to foreseeability, this court has observed that other Ohio courts of appeal have concluded that an overdose is a "reasonably foreseeable consequence" of the sale of a controlled substance. *Vogt, supra,* at ¶ 101-105. *See also State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶

91; *State v. Veley*, 6th Dist. Lucas No. L-16-1038, 2017-Ohio-9064, ¶ 30; *State v. Wells,* 12th Dist. Warren No. CA2016-02-009, 2017-Ohio-420, ¶ 39. "There is nothing extraordinary or surprising about the manner of [the victim's] death in relation to appellant's actions.  Appellant provided drugs to a known drug abuser.  The possibility of an overdose is a reasonably foreseeable consequence of providing a controlled substance to another*."  Wells* at ¶ 39.

**{¶42}** In the case sub judice, appellant contends that too much time elapsed from when he delivered the narcotics to the victim's death for any jury to reasonably infer that the drugs appellant supplied caused the victim's death.  However, as the state points out, the jury found appellant guilty of two felonies that proximately resulted in the victim's death, corrupting another with drugs (second-degree felony) and trafficking in a fentanyl-related compound (fifth-degree felony).  Moreover, (1) when the victim overdosed and died the only drugs found on or near her body are the drugs appellant provided, (2) the white powdery substance in the baggie on the victim's kitchen counter tested positive for fentanyl and methamphetamine, and (3) the deputy coroner testified that the victim died from fentanyl intoxication.  Messages between appellant and the victim, as well as the appellant's recorded statement, established that (1) appellant agreed to procure drugs for the

victim, (2) appellant retrieved the victim's money from a vehicle on her property, (3) appellant traveled out of state to obtain the drugs, (4) appellant delivered the drugs to the victim's porch, and (5) the victim's last communication to appellant occurred after he delivered the fentanyl.

**{¶43}** After we consider all the evidence, we believe that a rational jury could have considered this evidence and found beyond a reasonable doubt that appellant provided drugs to the victim, that the drugs contained fentanyl, and the victim's ingestion of the fentanyl proximately caused her death. *See State v. Allen*, 6th Dist. Wood No. WD-21-069, 2022-Ohio-3493, ¶ 22-23. Consequently, we conclude that the jury did not clearly lose its way and create a manifest miscarriage of justice. A rational trier of fact could have found that appellant created a substantial risk of death or a risk of some permanent incapacity when he sold the fentanyl compound, and this act contributed to the victim's death. *Carpenter* at ¶ 57; *see also Emerson,* 2016-Ohio-8509, 78 N.E.3d 1199, at ¶ 25 (corrupting another with drugs conviction based on sufficient evidence because reasonable juror could conclude administration of fentanyl to victim created substantial risk of death and was contributing cause of victim's death); *State v. Johnson,* 3d Dist. Crawford No. 3-10-14, ¶ 32 (corrupting another

with drugs conviction based on sufficient evidence because testimony showed defendant provided victim with controlled substances, except Vicodin, and victim suffered serious physical harm as a result of taking controlled substances).

{¶44} Therefore, in the case sub judice we conclude that the state presented ample, competent credible evidence that appellant caused the victim's death as a proximate result of selling her the fentanyl compound. *See Carpenter* at ¶ 60, *Emerson* at ¶ 23 (need not resolve whether defendant's singular act is the only cause of any lethal drug combination in victim's system). Here, the state adduced evidence that the fentanyl compound appellant sold to the victim constituted a *substantial or contributing* factor and cause in fact of the victim's death. Although we recognize that appellant argues that the victim could have acquired more drugs elsewhere, the jury, as the trier of fact, is free to determine, based on the evidence, that appellant supplied the drugs that the victim ingested. Again, the jury, as the trier of fact, is in the best position to evaluate credibility. *State v. Mitchell,* 3d Dist. Union No. 14-19-14, 2019-Ohio-5168, ¶ 32*,* citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

{¶45} Therefore, after our review we conclude that the state presented ample competent, credible evidence to prove that the

fentanyl compound appellant sold to the victim caused the victim to suffer serious physical harm and caused her death. Thus, appellant's involuntary manslaughter conviction is not against the manifest weight of the evidence and we overrule appellant's final assignment of error.

**{¶46}** Accordingly, for all the foregoing reasons, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee shall recover from appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                    Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.